UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW MICHAEL OUELLETTE,

       Petitioner,

                                    NO. 2:08-CV-10411
                                    VICTORIA A. ROBERTS
v.                                 UNITED STATES DISTRICT JUDGE

JEFFREY WOODS,

       Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DENYING MOTION FOR ORAL ARGUMENTS,
MOTION FOR EVIDENTIARY HEARING AND MOTION TO APPOINT COUNSEL**

      Andrew Michael Ouellette ("Petitioner"), a state prisoner currently[1] confined at the Kinross Correctional Facility in Kincheloe, Michigan, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A jury in Monroe County, Michigan convicted Petitioner of receiving, possessing, concealing, or aiding in the concealment of stolen property worth $20,000 or more ("receiving and concealing stolen property"), MICH. COMP. LAWS § 750.535(2)(a). The trial court sentenced him as a fourth-time habitual offender, MICH. COMP. LAWS § 769.12, to ten to twenty-five years in prison. Petitioner alleges that he is entitled to habeas relief because the police conducted a

---

[1] When Petitioner originally filed his petition, he was incarcerated at the Saginaw Correctional Facility in Freeland, Michigan where Lloyd Rapelje is the warden. Petitioner was subsequently transferred to the Kinross Correctional Facility where Jeffrey Woods is the warden. The proper respondent in a habeas case is the petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. Therefore, the Court substitutes warden Jeffrey Woods in the caption.

warrantless search in violation of the Fourth Amendment, he was denied a fair trial due to the admission of prejudicial evidence of uncharged prior bad acts and prosecutorial misconduct, and there was insufficient evidence to sustain his conviction.  Because two of Petitioner's claims are non-cognizable on habeas review and because the state court decision was neither contrary to federal law nor based upon an unreasonable determination of the facts in light of the evidence presented, this Court **DENIES** the petition for a writ of habeas corpus.  Also pending before the Court are Petitioner's Motion for Oral Arguments (Dkt. No. 8), Motion for Evidentiary Hearing (Dkt. No. 9), and Motion to Appoint Counsel (Dkt. No. 10), which are **DENIED** as moot.

## I.  Background

This case arises from a series of home invasions in Monroe, Michigan during May 2004.  During each of four break ins, the thieves stole jewelry, among other items.  On May 5, break ins occurred at the home of Darin and Debra Agner and at the home of Pamela Fosselman.  A "number one dad" charm, a necklace with a rose charm, and a bracelet engraved with the name "Alecia" were stolen from the Agners' home.  Jewelry missing from the Fosselman home included a ring engraved with the names "Bob and April."   A break in at the home of Helen Carmon occurred on May 6, 2004 and a gold necklace with a coin, among other items, was stolen.  The last of the four break ins occurred on May 10, 2004 at the home of Nicholas and Terry Carlton from which the thieves stole a 4.9 karat diamond ring, a gold and jade ring, and a black onyx ring.

Detective Mark Spreeman was investigating the Monroe break ins.  On May 12, he heard that Petitioner and co-defendant Marc Sanders, who had been arrested on an

unrelated charge and were in the county jail, were rumored to have been selling jewelry. Spreeman learned that Petitioner and Sanders had been staying at the Travel Inn, a hotel in Monroe, in Room 117. Spreeman consulted with the prosecutor's office on whether he needed a warrant to search Room 117. The prosecutor informed Spreeman that because the room had only been paid for through May 11, its occupants had no expectation of privacy after noon on May 12 and Spreeman could then search the room with the hotel owner's consent without a warrant. Spreeman obtained the owner's consent, and upon searching Room 117 after noon on May 12, he discovered a large amount of jewelry. In the hotel room, the police also found a May 7, 2004 receipt from a pawnshop for the sale of jewelry with Petitioner's name and driver's license number on it.

Subsequent to the police search of Room 117, a hotel employee claimed that he searched the room and found additional jewelry, which was turned over to police, and which turned out to be more jewelry from the break ins. The following jewelry was recovered from Room 117: 1) the Carlton's 4.9 karat diamond ring, which the parties stipulated was worth more than $37,000; 2) the Agner's "number one dad" charm; and 3) the Fosselman's "Bob and April" ring.

Petitioner sold some items to a jewelry store called Frenchies. The owner of Frenchies testified that he recalled purchasing some items on May 5 and 6, 2004 from Petitioner and turned the receipts for those transactions over to the police. Victim Carmon recovered her gold coin necklace from Frenchies. The Agners recovered the stolen gold necklace with a gold rose charm from Frenchies. They also recovered the "Alecia" bracelet.

In connection with the Carlton break in, the state charged Petitioner and co-defendant Sanders with second degree home invasion, safe breaking, and receiving and concealing stolen property. The state did not file any charges relating to the earlier three break ins against Petitioner. A jury acquitted Petitioner of the home invasion and safe breaking charges and convicted him of receiving and concealing stolen property.

In his appeal of right, Petitioner raised the same four claims he raises in his habeas petition. The Michigan Court of Appeals affirmed his conviction. *People v. Ouellette*, No. 261602, 2006 WL 1688183 (Mich. Ct. App. Jun. 20, 2006) (unpublished). The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Ouellette*, 477 Mich. 914 (2006). Petitioner now raises the following four claims:

I. Petitioner was denied a fair trial by the erroneous admission of overwhelming and confusing evidence of "similar acts" under MRE 404(b), in violation of Petitioner's Fifth and Fourteenth Amendment rights. The state court decision denying relief involved an unreasonable application of *Huddleston v United States* (1988).

II. Petitioner was denied a full and fair hearing in the state courts to challenge an illegal search and seizure in violation of Petitioner's Fourth Amendment rights. The state court decision involved an unreasonable application of federal law and a violation of 28 USC § 2254(e).

III. Petitioner was denied a fair trial because the jury was allowed to consider the charge of second-degree home invasion which should have been dismissed at the preliminary exam for lack of evidence. There was an insufficient amount of evidence to support the conviction of receiving and concealing stolen property in violation Petitioner's Fifth, Sixth and Fourteenth Amendment rights. Because Petitioner is innocent the verdict is unjust. The state court decision involved an unreasonable application of *Jackson v Virginia*, 443 US 307 (1979).

IV. Petitioner's conviction is a product of prosecutorial misconduct. The state elicited testimony involving suppressed evidence and inadmissible hearsay statements. It was an all around vindictive prosecution seeking a

conviction and not seeking justice in violation of Petitioner's right to a fair trial. The state court decision also involved unreasonable applications of *Berger v United States*, 295 US 78, 88 (1935); *Donnelly v DeChristoforo*, 416 US 637, 639 (1974); *Pointer v Texas*, 380 US 400 (1965); and *White v Illinois*, 502 US 346 (1992).

## II.  Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, a petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), a petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case." *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

### III. Discussion

#### A. Fourth Amendment Claim

Petitioner argues that the police conducted a warrantless search of the hotel room he and Sanders occupied in violation of the Fourth and Fourteenth Amendments.

It is well established that Fourth Amendment claims are not cognizable on habeas review if the State afforded a full and fair opportunity to litigate the constitutional claim. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Petitioner contends that he was denied a full and fair hearing in the state courts. The Sixth Circuit established a two-part inquiry to determine whether a habeas petitioner may raise a Fourth Amendment claim:

"First, the 'court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.'" *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000)

(quoting *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner raised his Fourth Amendment claim in a pre-trial motion to suppress. After hearing witness testimony and taking argument from defense counsel and the state, the state trial court denied the motion. Mot. Tr., pp. 13-28 (11/29/04). Petitioner appealed this decision to the Michigan Court of Appeals and the Michigan Supreme Court, which denied him relief. The Michigan Court of Appeals performed a lengthy analysis of the propriety of the search under the Fourth Amendment.[2] Petitioner had a full and fair opportunity to litigate this claim in the state courts. *Williams v. Ohio*, 547 F.2d 40, 40-41 (6th Cir. 1976) (state procedure allowing for motion to suppress and appellate review of ruling provides full and fair opportunity to litigate claim); *Robinson v. Jackson*, 366 F.Supp.2d 524, 527 (E.D. Mich. 2005) (Michigan procedure that provides for raising Fourth Amendment claim via motion to suppress is adequate procedural

---

[2]The Michigan Court of Appeals found the Fourth Amendment issue to be close. *People v. Ouellette*, 2006 WL 1688183 at *3 n. 4 ("We note for the benefit of similarly situated officers in the future that this procedure comes dangerously close to the line between a valid and invalid search, but here does not cross it.") It held the search to be constitutional:

> The warrantless search of the room was proper because neither defendant nor Sanders had an expectation of privacy in the hotel room at the time it was searched by the police. . . . The subsequent search of the room by Cole and Bogucki, employees of the bar and the hotel, who voluntarily turned over the fruits of their search to the police, was done without the knowledge of the police, so defendant's protection against unreasonable search and seizure was not violated by that search. . . . Additionally, a limited number of hotel employees were the only people with access to the hotel room after the police conducted their search and we therefore find that Cole's and Bogucki's subsequent search was not tainted.

*People v. Ouellette*, 2006 WL 1688183 at *3.

mechanism for purposes of *Stone v. Powell* analysis).  Petitioner's Fourth Amendment claim is not cognizable on habeas review under *Stone v. Powell, supra.*

### B.  Admissibility of "Other Acts" Evidence Claim

Petitioner argued in the state proceedings that the trial court erred in admitting evidence regarding the three home invasions in Monroe, for which Petitioner had not been charged, that preceded the Carlton home invasion, for which Petitioner had been charged.  The Michigan Court of Appeals upheld the trial court's decision to admit the evidence under MRE 404(b):

> Here, the trial court found that the evidence at issue was offered for the proper purpose of establishing knowledge.  The admitted "other act" evidence consists of testimony relating to break-ins at the Monroe residences where various pieces of jewelry were stolen, some of which jewelry was found shortly after the break-ins in a hotel room where defendant had been staying.  Evidence was presented that defendant sold some of the jewelry that was stolen from these residences to a pawnshop shortly after it was taken from the residences.  We conclude that because the "other act" evidence establishes that the jewelry found in the hotel room was stolen, and the jewelry defendant sold to a pawnshop was stolen, the "other act" evidence could establish that defendant had constructive knowledge that the jewelry [he was charged with illegally possessing] was stolen, and so was offered for a proper purpose under MRE 404(b).

*People v. Ouellette*, 2006 WL 1688183 at *2.  The court found that the evidence had been admitted for a proper purpose, i.e., to establish knowledge, that it was relevant, and more probative than prejudicial in light of the trial court's limiting instruction that the jury use the evidence only for a proper purpose and not as propensity evidence or evidence of bad character.

To the extent that Petitioner's argument in this Court is based upon state law, it fails to state a claim upon which habeas relief can be granted.  *Lewis v. Jeffers*, 497

U.S. 764, 780 (1990); *see also Walker v. Engle*, 703 F.3d 959, 962 ("[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus."), *cert. denied*, 464 U.S. 962 (1983). Petitioner claims that the admission of evidence surrounding the other Monroe home invasions made his trial fundamentally unfair in violation of his rights to due process. "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The category of cases in which evidentiary rulings have been held to violate fundamental fairness is extremely narrow. *Id.* (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

The Michigan Court of Appeals Court did not address Petitioner's federal constitutional due process claim. In such circumstances, where a state court does not expressly rule on federal constitutional grounds, the result of the state court's decision controls. *Id.* at 508 (quoting *Thompson v. Bell*, 315 F.3d 566, 585 (6th Cir. 2003)). The pertinent habeas inquiry is whether the result of the state court decision is "contrary to clearly established Supreme Court precedent." *Id.*

Petitioner has not presented and this Court has not found any Supreme Court precedent holding that a state court violates due process when it properly admits evidence of a criminal defendant's other bad acts.[3] As Respondent points out, the Sixth

---

[3]Petitioner argues that the Michigan Court of Appeals decision is an unreasonable application of *Huddleston v. United States*, 485 U.S. 681 (1988). *Huddleston* held that under federal rule of evidence 404(b), which governs the admission of other acts evidence in federal proceedings, "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.*, 485 U.S. at 689. Petitioner argues that there was no

Circuit held that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. As there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1), Petitioner's claim does not entitle him to habeas relief. *Id.* at 513.

### C.  Insufficiency of the Evidence Claim

Next, Petitioner appears to argue that the trial court erred in binding him over for second degree home invasion and denying his motion to quash because insufficient evidence on this charge was presented at the preliminary examination.

There is no federal constitutional right to a preliminary examination. *Dillard v. Bomar,* 342 F.2d 789, 790 (6th Cir.1965); *see also Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (Constitution does not require that a probable cause hearing be conducted prior to prosecution by information). Because the bind-over decision itself is a question of state law that does not implicate a federal constitutional right, a challenge to such a decision is not cognizable on federal habeas corpus review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *David v. Lavinge*, 190 F.Supp.2d 974, 978 (E.D. Mich. 2002) (citations omitted).

---

evidence that he committed the "other acts." As a preliminary matter, Petitioner overstates his case when he asserts that there was no evidence linking him to any of the "other acts" stolen jewelry or the "other acts" break ins. As the Michigan Court of Appeals found, some of this stolen jewelry was found in the hotel room where Petitioner was staying and Petitioner sold some of this jewelry at a pawnshop. While possession of stolen property is not sufficient evidence on which to convict for home invasion, it can be conclusive on a possession of stolen property charge. *See, e.g., People v. Gregory*, No. 206312, 2000 WL 33409137, *2 (Aug. 11, 2000). Moreover, the *Huddleston* Court did not address the admissibility of other act evidence in constitutional terms. *Bugh*, 329 F.3d at 513. It is therefore of no help to Petitioner in the federal habeas setting.

Petitioner also argues there was insufficient evidence to support his conviction for receiving and concealing stolen property. The Michigan Court of Appeals ruled on this claim:

> The elements of receiving, possessing, concealing, or aiding in the concealment of stolen property worth $20,000 or more are: (1) that the property was stolen; (2) that the value of the property met the statutory requirement; (3) that the defendant received, possessed, or concealed the property with knowledge that the property was stolen; (4) that the property was previously stolen; and (5) that the defendant had guilty actual or constructive knowledge that the property received or concealed was stolen. MCL 750.535(2)(a); *People v Pratt*, 254 Mich App 425, 427; 656 NW2d 866 (2002). Here, stolen jewelry was found in the hotel room where defendant was staying, and defendant sold stolen jewelry to a pawnshop. The value of the stolen property that was found in the hotel room and that defendant sold was over $20,000. Since the stolen property was found in the hotel room where defendant was staying shortly after it had been stolen, and an unidentified bar patron stated that defendant had tried to sell a 14-karat necklace for only $40, [and evidence was presented that defendant and Sanders had attempted to sell jewelry in the bar connected to the hotel where they were staying,] we conclude that a rational trier of fact could infer that defendant had actual or constructive knowledge that the jewelry that he actually or constructively possessed was stolen. Viewing the evidence presented in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of receiving, possessing, concealing, or aiding in the concealment of stolen property worth $20,000 or more were proven beyond a reasonable doubt. *Pratt, supra*, p 427; *Warren (After Remand)*, *supra,* p 588. Sufficient evidence was presented to support defendant's receiving, possessing, concealing, or aiding in the concealment of stolen property worth $20,000 or more conviction. *Johnson, supra,* p 723.

*People v. Ouellette*, 2006 WL 1688183 at *5.

The Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White*, 531 U.S. 225, 228-29 (2001) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970)). Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

11

fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

The Michigan Court of Appeals summarized the evidence produced at trial that supported Petitioner's conviction. There is no dispute that the value of the jewelry stolen from the Carltons met the statutory amount. Petitioner seems to argue that there was no evidence that he possessed the jewelry because the hotel room in which it was found was not registered to him. He also appears to argue that too much time elapsed between the time the jewelry was stolen and the time it was found. Finally, Petitioner argues there was no evidence that he knew the jewelry was stolen.

As summarized by the Michigan Court of Appeals, there was evidence connecting Petitioner to the other Monroe residence break ins. Petitioner sold jewelry stolen from the Agners and the Carmons to Frenchies. Jewelry stolen from the Fosslemans was found in the hotel room Petitioner shared with his co-defendant Sanders. Petitioner had a Travel Inn keycard in his pants pocket when he was arrested. There was evidence that between May 5 and May 12, Petitioner offered to sell jewelry to employees and patrons of the Travel Inn and adjoining bar. Police also had evidence that a shoe print discovered at the Carlton residence matched Petitioner's co-defendant and roommate Sanders' shoe.

Given the temporal proximity between the Monroe home invasions, the sales at Frenchies, the attempted sales at the hotel and the discovery of the stolen jewelry in Room 117, as well as the relationship between Petitioner and Sanders including the joint occupancy of Room 117, a rational juror could have found the elements of receiving and concealing stolen property beyond a reasonable doubt. Even though

12

Room 117 was registered in Sanders' name, there was ample evidence that Petitioner was staying in the room with Sanders and that they were companions. The evidence of Petitioner's behavior was consistent with the prosecutor's theory that Petitioner and Sanders engaged in a pattern of stealing, possessing and fencing jewelry. The evidence was sufficient for the jury to infer that Petitioner knew the jewelry found in the hotel room that he actually or constructively possessed was stolen. Petitioner's arguments go to the weight and not the sufficiency of the evidence. *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (in weighing challenges to the sufficiency of the evidence, court will not weigh the evidence, assess the credibility of the witnesses, or substitute judgment for that of the jury) (quoting *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)). Accordingly, the Michigan Court of Appeals' decision did not involve an unreasonable application of Supreme Court precedent, is not contrary to federal law, and is not based upon an unreasonable determination of the facts in light of the evidence presented. Petitioner's claim based upon the sufficiency of the evidence does not entitle him to habeas relief.

### D. Prosecutorial Misconduct Claim

In his final claim, Petitioner argues that the prosecutor engaged in misconduct so egregious that it rendered the trial fundamentally unfair. Prosecutorial misconduct must be so glaring as to make petitioner's trial so fundamentally unfair as to deny him due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). On habeas review, "the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation omitted). When reviewing claims of

13

prosecutorial misconduct, the first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir.2006). If the conduct or remarks were improper, the court must consider whether the improper acts were so flagrant as to warrant reversal. *Id.*

Petitioner challenges four comments made by the prosecutor.

### 1. Mark McNeil's Testimony

First, Petitioner argues that the prosecutor improperly elicited inadmissible testimony from witness Mark McNeil. Before trial Petitioner moved to suppress McNeil's testimony that when McNeil was working at the Travel Inn, Sanders asked him to give Sanders and Petitioner a ride so that they could go out and rob houses. The trial court granted the suppression motion because it found that the co-conspirator exception to the hearsay rule did not apply; there was no proof that Sanders' statement was made during the furtherance of a conspiracy. Mot. Tr., p. 8 (11/29/04). The court continued that if the prosecutor later found a basis for the statement's admission and persuaded the court of an alternative ground for its admissibility outside the presence of the jury, it might then allow the prosecutor to elicit the statement. *Id.*, p. 9.

During trial, the prosecutor asked McNeil whether Petitioner ever asked him for a ride to do break ins. Trial Tr., pp 276-77 (1/25/05). Defense counsel immediately objected and the trial court sustained the objection, but then immediately after allowed the question. *Id.*, p. 277. McNeil responded in the negative and explained that the only time Petitioner asked him for a ride was when McNeil took him to the Gibralter Trade Center and to certain pawn shops. *Id.,* p. 278.

The Court of Appeals found the prosecutor's inquiry to be proper and in any

event not prejudicial:

> Here, the trial judge previously ruled that the prosecutor could not elicit testimony from McNeil regarding what Sanders asked him because what Sanders asked McNeil was hearsay and the co-conspirator hearsay exception was not met. However the trial judge did not rule that the prosecutor could not elicit testimony from McNeil regarding what defendant asked him. Defendant's statements/questions to McNeil would not be considered hearsay because they would most likely be considered an admission by a party opponent. See, MRE 801(d)(2). Therefore, the prosecutor's question to McNeil did not attempt to elicit inadmissible hearsay evidence. MRE 801(d)(2). In any case, McNeil answered the question in the negative, so the prosecutor's question did not deny defendant his right to a fair and impartial trial, and did not amount to prosecutorial misconduct.

*People v. Ouellette*, 2006 WL 1688183 at *6.

As the Michigan Court of Appeals concluded, the prosecutor did not ask McNeil about what Sanders asked him but instead what Petitioner asked him. The prosecutor adhered to the trial court's earlier ruling. Because the prosecutor's questions were not designed to elicit inadmissible testimony, they were not improper and do not constitute prosecutorial misconduct.

### 2. Gaytona Sennett's Testimony

Petitioner next challenges two questions the prosecutor posed to witness Gaytona Sennett, an employee of the bar that adjoined the Travel Inn. Petitioner alleges that the prosecutor elicited testimony about a car that Petitioner and Sanders were suspected of stealing. The trial court had granted Petitioner's pre-trial motion to suppress this "similar acts" evidence because unlike the other similar acts evidence the state sought to introduce, it did not involve jewelry. Mot. Tr., p. 9 (1/20/05). While Ms. Sennett testified about Petitioner telling her that he had stolen a car, the Michigan Court of Appeals found that the prosecutor was questioning Sennett about stolen jewelry and

that Sennett offered unsolicited information about the stolen car:

> The prosecutor asked Sennett, an employee of the bar, "[w]hat did defendant tell you he had for sale then? Sennett responded, "he never told me that he had anything for sale. He just told me that he had stolen a car." We conclude that the prosecutor's question was asked in an attempt to determine whether defendant had directly asked Sennett whether she wanted to buy jewelry; it was not an attempt to elicit testimony about a stolen car. Our conclusion is supported by the fact that Sennett had previously testified that defendant was asking bar patrons whether they wanted to buy jewelry. The response about the stolen car was successfully objected to, and the trial judge immediately instructed the jury to disregard the response. We find that the prosecutor's question did not deny defendant of his right to a fair and impartial trial, and did not amount to prosecutorial misconduct.

*People v. Ouellette*, 2006 WL 1688183 at *7. Because the prosecutor's question to Sennett was not designed to elicit inadmissible testimony, it was not improper and does not constitute prosecutorial misconduct.

Petitioner next challenges a second question the prosecutor posed to Sennett concerning a statement an unidentified bar patron made to Sennett regarding Petitioner's attempts to sell jewelry. The Michigan Court of Appeals found:

> Before the prosecutor attempted to elicit testimony from Sennett regarding the unidentified patron's statement to her about defendant trying to sell a necklace, the prosecutor asked the judge to make a hearsay ruling on the statement. The trial judge ruled that the patron's statement to Sennett was admissible evidence because it fell under the present sense impression hearsay exception. When the prosecutor subsequently elicited testimony about the patron's statement, the prosecutor was not attempting to elicit inadmissible evidence. We find that the prosecutor's question did not deny defendant of his right to a fair and impartial trial, and did not amount to prosecutorial misconduct.

*Id.* Because the prosecutor's second question to Sennett was not designed to elicit inadmissible testimony, it was not improper and does not constitute prosecutorial misconduct.

16

### 3. Derek Cole's Testimony

The fourth action Petitioner challenges as prosecutorial misconduct concerns the alleged elicitation of testimony regarding a loaded handgun discovered in an unidentified room at the Travel Inn by Derek Cole, manager of the adjoining bar. The Michigan Court of Appeals found:

> Here, the prosecutor asked Cole to tell him about an occasion when he found something in a hotel room. Cole responded, "[t]he first big item that we found was a loaded handgun," to which the prosecutor quickly responded, "I'm sorry, that's not where I meant to go ... [w]hat I meant to ask you about was was there ever an occasion where maybe some jewelry-type items were found and the police were called?" Defendant did not object. We conclude that the prosecutor's question was asked in an attempt to get Cole to testify to the jewelry Cole found in the hotel room where defendant was staying. Our conclusion is supported by the prosecutor's immediate response to Cole's mention of the gun, and the fact that Cole and Bogucki did search the room defendant was staying in and found jewelry in the tissue box. Therefore, the prosecutor's question did not deny defendant his right to a fair and impartial trial, let alone amount to plain error which affected defendant's substantial rights, and thus, did not amount to prosecutorial misconduct.

*Id.* Again, the prosecutor's question to Cole was not designed to elicit inadmissible testimony

In all four instances of alleged prosecutorial misconduct, the Michigan Court of Appeals concluded that the prosecutor's questions were not even improper. Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court shall be presumed correct and the applicant shall have the burden of rebutting the presumption by clear and convincing evidence. *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir.), *cert. denied*, 543 U.S. 892 (2004). This presumption applies as well to factual findings of a state appellate court made on its review of the state trial record. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001). Petitioner failed to overcome the presumption of

17

correctness attached to the state court's factual findings regarding the propriety of the challenged comments. After a review of the record and the trial transcript, this Court concludes that the state court decision is based upon a reasonable determination of the facts in light of the evidence presented. Further, the decision is neither contrary to nor an unreasonable application of federal law. Petitioner is not entitled to habeas relief on this claim.

## IV. Pending Motions

Because this Court has decided that Petitioner is not entitled to habeas relief, Petitioner's Motion for Oral Arguments (Dkt. No. 8), Motion for Evidentiary Hearing (Dkt. No. 9), and Motion to Appoint Counsel (Dkt. No. 10) are **DENIED** as moot.

## V. ORDER

The Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

Petitioner's Motion for Oral Arguments (Dkt. No. 8), Motion for Evidentiary Hearing (Dkt. No. 9), and Motion to Appoint Counsel (Dkt. No. 10) are **DENIED**.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 21, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record and Andrew Ouellette by electronic means or U.S. Mail on September 21, 2009.

s/Linda Vertriest
Deputy Clerk